United States District Court
Southern District of New York

------------------------------------------------------x

ABEL CEDENO,

                Plaintiff,

   -against-

DEPARTMENT OF EDUCATION OF THE
CITY OF NEW YORK, RICHARD A.
CARRANZA, as Chancellor of the
Department of Education,  MS. JACOBI,
In her capacity as the former Principal
of the now closed Wildlife Conservation
Highschool, JOHN OR JANE DOE 1, the
Principal of I.S. 117 during the period
Plaintiff was a student, JOHN OR JANE
DOE 2, the Principal of M.S. 318 during
the period Plaintiff was a student, JEANNIE
GALLEGO, in her capacity as Acting Title
IX Coordinator for the Department of
Education.

                Defendants.

------------------------------------------------------x

Docket:
Date Filed:

**ABEL CEDENO**, by and through his counsel, **THOMAS D. SHANAHAN, P.C.**, does hereby complain of the Defendants as follows:

1. Plaintiff ABEL CEDENO ("ABEL") is an individual, residing in New York City, and was formerly a full-time student in the New York City Department of Education's Wildlife High School ("Wildlife").

2. Prior to attending Wildlife, Abel attended the following schools operated by the Defendant DEPARTMENT OF EDUCATION: M.S. 318, I.S. 117 and I.S. 227.

3. Defendant DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK ("D.O.E.") is a body established pursuant to the New York State Education Law §§2590-b and 2590-g,

with its principal place of business located at 52 Chambers Street, New York, New York 10007, with its agent for service listed as Office of General Counsel of the D.O.E, 52 Chambers Street, New York, New York 10007 and the office of Corporation Counsel located at 100 Church Street, New York, New York 10007.   D.O.E. is a person within the meaning of 42 U.S.C.A. §1983.   Defendant D.O.E. conducts educational programs and activities and is the recipient of federal financial assistance within the meaning of Title IX.

4. RICHARD A. CARRANZA is named in his official capacity as the Chancellor of the Department of Education.  Service is proper at the address for the Office of General Counsel in Paragraph 3.

5. MS. JACOBI is named in her official capacity as the former Principal of the now closed Wildlife Conservation Highschool.  Service is proper at the address for the Office of General Counsel in Paragraph 3.

6. JOHN OR JANE DOE 1 is named in his or her official capacity as the Principal of I.S. 117 during the period Plaintiff was a student at that institution.  Service is proper at the address for the Office of General Counsel in Paragraph 3.

7. JOHN OR JANE DOE 2 is named in his or her official capacity as the Principal of M.S. 318 during the period Plaintiff was a student at that institution.  Service is proper at the address for the Office of General Counsel in Paragraph 3.

8. JEANNIE GALLEGO is named in her capacity as Acting Title IX Coordinator for D.O.E.

9. Service is proper at the address for the Office of General Counsel in Paragraph 3.

10. Non-party Luz Hernandez (hereinafter "Luz") is the mother of Abel. Non-party Jose Ortiz (hereinafter "Jose") is the step-father of Abel. At all times relevant, Abel was a student in the New York City Public School system operated by the D.O.E.

### Venue, Statues and Jurisdiction

11. Venue is proper pursuant to 28 U.S.CA. §1391, as the cause of action herein accrued in the Southern District of New York and a federal statute gives rise to the action.

12. This Court has jurisdiction over claims arising under the United States Constitution and federal statutes pursuant to 28 U.S.C.A. §§1331, 1343, 2201 and 2202.

13. This Court has pendent jurisdiction over the state and common law causes of action.

14. The following federal statutes are at issue: 42 U.S.C.A. §1983, Title IX of the Civil Rights Act of 1964, 42 U.S.C. §2000h-2, and Title IX of the Education Amendments of 1972, 20 U.S.C.A. Sec. 1681, *et seq.* (Title IX") and the Fourteenth Amendment (Deprivation of liberty and property without due process of law and of violation of equal protection clause), which prohibits recipients of Federal financial assistance from discriminating on the based of sex in education programs or activities.

15. The New York State Dignity for All Students Act, N.Y.S. Education Law, Sec. 801-a, New York State Constitution (Due process and equal protection violations).

16. Chancellor's Regulation A-832, as amended August 21, 2013, prohibits discrimination or disparate treatment based upon an individual's sex, gender and actual or perceived sexual orientation.

17. A "Notice of Claim" was filed with the New York City Law Department on or about December 17, 2017. The Notice of Claim specifically identified D.O.E. as a defendant or party for purposes of litigation.

**Preliminary Statement**

18. Bullying in schools is an epidemic across the United States. Often, the bullying involves a young child's actual or perceived sex, gender, sexual orientation and/or gender identity or expression. Bullying takes place during formative years, when young people are already often confused about their sex, gender and their emerging sexuality.

19. Far too often, children who do not conform to "normal" age-appropriate behaviors, often as determined by their peers and/or bullies, are targeted for name calling and at times violence. Given the seeming inability or unwillingness of some school personnel to discipline bullies, children are too often preyed upon in an open and notorious manner. These children suffer humiliation, mental anguish and depression.

20. Many of these children take their own lives rather than continue to be subjected to the abuse.

21. The consequences of routine bully include: cutting class; lower grades; a reduced likelihood of attending secondary educational institutions; lower levels of self-esteem; and, higher levels of depression.

22. In many cases things get worse after a victim reports bullying. Retaliation by the bullies and their friends is common.

23. We respectfully submit that most children forced to endure six years of emotional abuse and physical violence similar to what Abel endured are not around to tell their story.

24. Many take their own life to bring an end to their daily suffering.

25. This case is brought to remedy the complete failure of the Department of Educations, numerous agents including teachers, counsellors, administrators and other support staff, who failed to protect Abel over the course of six years from a pattern of egregious bullying.

## Facts Giving Rise to Violations Alleged Herein

26. Over the course of many years and continuing through many grade levels, Abel was subjected to egregious bullying by peers based upon his sex, gender, actual or perceived gender, gender non-conformity, sex and/or actual or perceived sexual orientation.

27. Almost all D.O.E. employee including hall monitors, teachers, guidance counselors, school and district administrators did nothing.

28. All failed to report the egregious and continuous conduct as required under various laws, regulations and ordinances.

29. Abel, Luz and Jose reported the egregious bullying to officials at the schools attended by Abel.

30. When Abel and his mother reported the bullying, rather than the situation improving, it worsened.

31. Abel was subjected to retaliation by other students including physical violence.

5

32. Abel and his mother first reported that Abel was being bullied to officials of D.O.E. on or about the sixth grade when Abel was twelve years old.

33. Abel and his parents repeatedly complained to the D.O.E. agents and administrators over the course of six years as the bullying plead herein was taking place.

34. Accordingly, a **special relationship,** as that term is defined under relevant case law and applicable statutes, was created between Abel and the Defendants. This special relationship continued from 2012 to the present.

## Synopsis of Escalating Pattern of Bullying

### Fifth Grade

35. In fifth grade, Abel saw a television commercial for "Locks of Love". The program encourages people to grow and then donate their hair to children with cancer.

36. After seeing this commercial and continuing for the next five years, Abel began to grow his hair long for purposes of ultimately donating it.

### Sixth Grade

37. Sixth grade was the first school year Abel experienced bullying. The bullying coincided with his ever-lengthening hair. Abel was tall and skinny, and kids began to pull his hair and call him a girl.

38. After school officials viewed security footage of Abel being chased by other students in the hallways and having his hair pulled among other forms of bullying, counselors at M.S. 318 met with Abel.

39. Counselors continued to meet with Abel and Luz every few weeks. However, the behavior continued. Upon information and belief, no disciplinary actions were ever taken against the bullies.

### Seventh Grade

40. The bullying continued and worsened into the seventh grade when Abel attended I.S. 117.

41. The situation was exacerbated as Abel transferred to a new school and had no friends to defend him.

42. Among the discriminatory and offensive comments that Abel had to endure was being called a "faggot" and repeatedly told he "looks like a girl".

43. The bullying and offensive conduct occurred almost every week and included having his hair pulled, being pushed and shoved and having things thrown at him.

44. Although Abel, Luz and Jose brought the bullying to the attention of school administrators, the bullying continued and to the best of their knowledge, no students were disciplined.

### Eighth Grade

45. Abel began "sex education/health class" in the eighth grade. This class proved exceptionally traumatizing for Abel.

46. During class, students would yell out sexually inappropriate comments such as "Abel's a faggot", a "girl" and "Abel likes that" in a reference to a lesson on oral sex.

47. Another example is a teacher pointing out the prostate on an anatomical chart and students yelling: "Abel likes that".

48. Although **three** teachers were in the sex education classroom at all times, the bullies were never subjected to discipline. Almost always, the comments were ignored by teachers and ]the class told to "settle down".

7

49. Abel also began to experience more serious physical violence. On a regular basis, he would be punched, kicked, hit and have items thrown at him all why enduring discriminatory anti-gay epitaphs.

50. Abel, reported the bullying to Ms. Bernard, his dance teacher.

51. Ms. Bernard would permit Abel to remain in her classroom and comfort him.

52. Luz and other members of Abel's family grew concerned when Abel began returning home from school with bruises on his body.

53. Abel describes the eight-grade as the time he "learned how to take a hit" and remembers being grateful "no bones were broken".

54. Also in the eighth grade, bullies began to steal belongings from Abel.

55. When Abel's family questioned him about what had happened to his belongings, he told them that he had "lost" them.

56. Among the property taken by other students were his backpack, cell phone and winter coat (his coat was taken more than once).

57. Abel denied bullying but Luz, Jose and other family members suspected it. Luz went to I.S. 227 and met with the Vice Principal on numerous occasions to report concerns that her son was being bullied.

58. In addition, Jose, met with Ms. Langston, who was a upon information and belief, a Dean and history teacher.

### Ninth Grade

59. When Abel started in Wildlife, the bullying that Abel had experienced in middle school continued.

60. The bullying included: derogatory names; embarrassing Abel in front of class; calling him "faggot" and "sissy"; pushing him; and, pulling his hair.

61. The conduct occurred in class and in the hallways.

62. Abel reported the bullying to Mr. Ray, a guidance counselor at Wildlife.

63. Both Abel and Luz met with Mr. Ray (guidance counselor) and Mr. Keating (teacher), at least once every two months in person.

64. Non-party Luz called Mr. Keating at least once or twice a week for most of the school year to discuss the bullying.

65. Mr. Ray told Abel and Luz: "Ignore it"; "that's how boys are"; and, "be smarter than them".

66. Given the school failed to seriously address the bullying, Abel and his family decided that it was best for him to relocate to live with family in Tennessee.

67. Abel resided in Tennessee for approximately six months, and then chose to return to New York. Abel returned because he missed his family and felt guilty about the financial expenses his family was incurring for him to live in Tennessee.

68. When Abel returned to New York, he told Luz he did not want to return to Wildlife for the tenth grade.

69. Luz and Jose went to the D.O.E. District office on Fordham Road on three separate occasions.

70. The family requested that Abel be transferred to a new school.

71. After meeting with the family and with full awareness of the years of bullying Abel had endured, the D.O.E. District Representative denied the request.

72. D.O.E. instructed Abel to return to class at Wildlife.

73. Jose was told by the D.O.E. representative: "Abel belongs to Wildlife and [they] cannot change it".

### Tenth Grade

74. Upon returning to Wildlife, the taunts, discriminatory and anti-gay bullying continued. The bullying included being pushed, prodded, called names and having his belongings stolen.

75. The bullying took place in classrooms and in the common areas such as hallways in full view of teachers and hall monitors.

76. Upon information and belief, none of the D.O.E. personnel who observed the bullying reported it.

77. Abel again reported the bullying to two school counselors: Mr. Ray and Mr. Keating.

78. Mr. Ray told Abel it was best for him to ignore the taunts and bullying.

79. After being told by Mr. Ray to ignore the bullying, Abel realized that school authorities would not help him to stopped reporting what was happening.

80. Abel began to either allow kids to bully him or "cut class" to avoid being bullied.

81. At the end of tenth grade, Abel cut his hair and made the donation to children cancer survivors.

82. With his haircut short, Abel hoped the bullying might lessen in frequency and intensity.

83. Unfortunately, things only got worse as Abel had been identified by bullies as someone to be targeted for abuse.

## Eleventh Grade

84. In the eleventh grade, the bullying continued. Abel continued to be pushed, have objects thrown at him both in class and in the hallways. The bully's again stole numerous personnel items belonging to Abel.

85. Among those items were his book bag and winter coat. On one occasion, Abel reported some of the items stolen to the police department.

86. During classes, most notably math class, Abel continued to endure having pencils, pens and other items thrown at him and teachers do nothing.

87. Abel's eleventh grade math class was particularly rowdy and abusive.

88. Abel would leave class on his own and often times go to the guidance counselor's office (Ms. Evelyn).

89. Abel would complain to Ms. Evelyn about what was happening in class and that he did not feel safe.

90. Although Abel would explain to Ms. Evelyn what was happening, she failed to report the anti-gay bullying to school officials as required by law.

91. During the eleventh grade, Abel attempted suicide with sleeping pills.

92. Thankfully, his attempt was not successful.

93. Abel missed substantial days of school in the eleventh grade due to the bullying he was forced to endure.

94. Abel chose to "cut class" rather than endure the relentless bullying.

## Twelfth Grade (First Year)

95. In the twelve grade the bullying and homophobic taunts continued unabated.

96. Given the severity of the conduct and fact that school officials did nothing, Abel began to protect himself by "skipping school" and hanging out with friends instead.

97. Although he had "cut class" before, in the twelve grade he missed substantially more days resulting in Abel having to repeat the twelfth grade.

98. When he attended school and the bullying occurred, Abel would go to Ms. Evelyn's office.

99. Abel would explain to her what was happening. Although Ms. Evelyn comforted Abel and provided him with a safe place away from the bullies, she failed to report the bullying to school officials as required by law.

100. During this year, non-parties Matthew Mc Cree (hereinafter "Mc Cree") and Ariane Laboy (hereinafter "Laboy") beat-up a close friend of Abel.

101. Abel was therefore aware of just how violent Mc Cree and Laboy were.

102. When Abel would come home from school, he would at times have bruises and would go straight to his room and go to bed.

103. Although Abel denied being bullied, his family suspected it.

104. Luz went to Wildlife and complained. No action was ever taken in response to the complaints.

### Twelfth Grade (Second Year)

105. Abel only attended his "second year" of twelve grade for approximately one week.

106. Bullies at the school, including Mc Cree, Laboy and other members of the "800YGZ Gang", who operated freely within Wildlife, threatened Abel with serious

12

physical violence both on school grounds and after school.

107. Given Mc Cree and Laboy had a physical altercation with a close friend of Abel the year before, Abel had personal knowledge of their propensity for violence.

108. As such, Abel grew very concerned for his safety and well-being.

On September 27, 2017, Mc Cree, Laboy and other students began pelting Abel with pencils, pens and other items while calling him "faggot" and other epitaphs.

109. Although **two** teachers were present in the class room, they did nothing.

110. Abel left the classroom to compose himself in the bathroom.

111. He left on his own without seeking permission from the two teachers. After composing himself, he returned to the classroom in the hope that the rowdy and abusive behavior would not continue.

112. Upon returning, Abel was again pelted with pencils, pens and other items. Mc Cree then approached Abel and began punching him in the face.

113. Laboy also approached Abel. In self-defense, Abel utilized a knife to protect himself.

114. Abel was attacked by two students, Mc Cree and Laboy, who were not threatened or provoked by Abel and who were intent on causing him great bodily harm.

115. All the while the **two** teachers, Mr. Jacobi and Mr. Kennedy, not surprisingly, stood by and did absolutely nothing.

116. In self-defense, Abel brought a knife to school during the vicious assault by gang-members Mc Cree and Laboy, utilized the knife in self-defense.

117. Abel's actions in his own self-defense resulted in Mc Cree passing away and

13

Laboy being hospitalized.

## Violent and Discriminatory Environment at Wildlife

118. Abel's repeated reports to a guidance counselor at Wildlife were not reported as required under Chancellor's Regulation A-832.

119. In fact, Abel was told by the guidance counselor to "get over it", "it was not such a big deal" and "everything would be alright if he just ignored it".

120. The conduct of the guidance counselor and senior administration of Wildlife is contrary to the Dignity for All Student's Act, Chancellor's Regulation A-832 and federal, state and city laws cited herein.

121. Upon information and belief, the Wildlife policy of concealing bullying at the school from the Chancellor's Office and other senior administrative officials, including but not limited to the Title IX Administrator at the D.O.E., was not limited to Abel.

122. For example, in February 2017, another student attempted to hang himself in a stairwell at the school after enduring bullying. Thankfully that student was not successful.

123. In a *New York Times* article about the stair-well suicide attempt, the child's grandmother, Ligia Figueroa, indicated that although the bullying had been reported to Wildlife officials, nothing was done to ensure that it ended.

124. According to the *New York Times*, the child confirmed he had reported the bullying to "a dean, the school social worker and the principal...but ultimately, all that did was make the bullying worse".

125. In a video available online, another Wildlife student is taunted with anti-gay epitaphs. in a school bathroom.

126. In October 2017, the principal of Wildlife, Defendant Jacobo, was removed from

14

the school and to a Field Support Center away from students.

127.    Upon information and belief, safety and the overall education environment at Wildlife deteriorated over the last few years. For example, in a 2016 survey, 55% of students reported feeling safe at Wildlife and 19% of teachers there said they would "recommend" the school to parents. In 2013, 94% of teachers said they would "recommend" the school to parents.

128.    In early 2018, Wildlife was closed given the violence that permeated it's hallways and classrooms.

## Conclusion

129.    Abel no longer attends public school and has not graduated from high school and received a diploma.

130.    Abel was incarcerated at Riker's Island for a three-month with murders, rapists and other dangerous, violent felons.

131.    Abel has sustained substantial emotional damage, including but not limited to emotional distress damages that will continue throughout his life.

132.    Abel is unable to focus and study for his G.E.D. or high-school equivalency, requires medication to avoid anxiety and stress related panic attacks and is years behind his peers in the context of completing high-school, attending college and moving forward with his life.

133.    Abel is currently taking numerous prescription medications to control his anxiety, stress and emotional distress resulting from the abuse he was subjected to beginning at twelve years old.

134.    Abel has been damaged and will continue to suffer damages in an amount

currently unknown and to be determined in discovery.

### As and For a First Cause of Action
### <u>Constitutional & Civil Rights</u>

135.    Plaintiff repeats and realleges all the allegations previously plead as if fully restated herein.

136.    While Abel was a student in schools operated by D.O.E., from 2011 until 2017, he was subjected to harassment so severe and persuasive that it constitutes discrimination based upon sex, gender, gender non-conformity, actual or perceived sexual orientation.

137.    The collective Defendants actions and inactions, while acting under color of state law, intentionally and deliberately deprived Plaintiff of his civil rights guaranteed by the United States Constitution, by depriving him of liberty and property without due process of law and by denying him the equal protection of the laws.

138.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has been injured and suffered damages.

139.    Defendants, while acting under color of state law, intentionally and deliberately deprived Plaintiff of his rights guaranteed by Title IX, in that Defendants participated in the creation, maintenance, and expansion of a hostile educational environment that discriminated against students who did not conform with stereotypical gender stereotypes.

140.    Defendants failures to adequately report and investigate allegations of violence, harassment and discrimination, and their failure to respond with effective corrective and protective measures, is not substantially or rationally related to any compelling or legitimate governmental purpose.

16

141.	Plaintiff brings this action pursuant to 42 U.S.C.A. §1983. The Defendants systematic and continuous intentional misconduct occurred under color of state law. Defendants, knew, or should have known, about Plaintiff's complaints and the failure of numerous agents of D.O.E. to remedy the unlawful conduct complained of herein.

142.	The conduct gives rise to violations of Plaintiff's rights under the Fourteenth Amendment and Title IX. The conduct gives rise to a claim for relief pursuant to 42 U.S.C.A. §1983 for declaratory and injunctive relief, for compensatory damages, including pain and suffering in an amount currently unknown and to be determined in discovery.

### As and for a Second Cause of Action Under Title IX

143.	Plaintiff repeats and realleges all the allegations previously plead as if fully restated herein.

144.	While Abel was a student in schools operated by D.O.E., from 2011 until 2017, he was subjected to harassment so severe and persuasive that it constitutes discrimination based upon sex, gender, gender non-conformity, actual or perceived sexual orientation.

145.	Plaintiff was entitled to the protections set forth in Title IX against discrimination in the educational environment on the basis of his sex and gender and his failure to conform to stereotypical gender-specific conduct.

146.	At all times, D.O.E. was an educational agency within the meaning of Title IX and was prohibited from discriminating against Plaintiff either directly or indirectly, and/or failing to correct discrimination within the educational environment.

147.	As a direct and proximate result of Defendant's discrimination, Plaintiff has been

denied his right of equal access to a public education and has suffered severe humiliation, anguish, pain and suffering, incidental and consequential damages and expenses, plus costs and attorney fees in an amount to determined during discovery and at trial along with injunctive relief, including but not limited to enjoining any further violations and directing defendants to implement appropriate training and supervision of administrators and other agents of D.O.E. in a manner consistent with federal law.

### As and for a Third Cause of Action for Negligent Supervision

148. Plaintiff repeats and realleges all the allegations previously plead as if fully restated herein.

149. Defendants owed Plaintiff a legal duty not to harm him and to protect from Reasonably foreseeable harm by other students and educators.

150. Based upon the conduct as alleged in this Complaint, Defendants on multiple Occasions breached their duty to the Plaintiff and were negligent in their case and treatment of Plaintiff. As a direct and proximate result, Plaintiff has been damaged in an amount currently unknown and to be determined in discovery.

**WHEREFORE**, Abel prays for an order of this Court entering judgment in his favor and awarding actual, compensatory and punitive damages, future lost wages, reputational damage, attorney fees, costs, injunctive and declaratory relief and such other, different and further relief as is deemed just, equitable and proper.

Dated: New York, New York
June 14, 2019

By:_____
Thomas D. Shanahan, Esq. (TS-3330)
Thomas D. Shanahan, P.C.
551 Fifth Avenue, Thirty-First Floor
New York, New York 10176
Phone (212) 867-1100, x11
tom@shanahanlaw.com

denied his right of equal access to a public education and has suffered severe humiliation, anguish, pain and suffering, incidental and consequential damages and expenses, plus costs and attorney fees in an amount to determined during discovery and at trial along with injunctive relief, including but not limited to enjoining any further violations and directing defendants to implement appropriate training and supervision of administrators and other agents of D.O.E. in a manner consistent with federal law.

### As and for a Third Cause of Action for Negligent Supervision

148.   Plaintiff repeats and realleges all the allegations previously plead as if fully restated herein.

149.   Defendants owed Plaintiff a legal duty not to harm him and to protect from Reasonably foreseeable harm by other students and educators.

150.   Based upon the conduct as alleged in this Complaint, Defendants on multiple Occasions breached their duty to the Plaintiff and were negligent in their case and treatment of Plaintiff. As a direct and proximate result, Plaintiff has been damaged in an amount currently unknown and to be determined in discovery.

**WHEREFORE**, Abel prays for an order of this Court entering judgment in his favor and awarding actual, compensatory and punitive damages, future lost wages, reputational damage, attorney fees, costs, injunctive and declaratory relief and such other, different and further relief as is deemed just, equitable and proper.

Dated: New York, New York
      June 3, 2019

By:_____
Thomas D. Shanahan, Esq. (TS-3330)
Thomas D. Shanahan, P.C.
551 Fifth Avenue, Thirty-First Floor
New York, New York 10176
Phone (212) 867-1100, x11
tom@shanahanlaw.com

## CLIENT VERIFICATION

State of New York      }
                       } ss:
County of New York     }

    Abel Cedeno, being duly sworn, does hereby swear that he has reviewed the substantive contents of this Notice of Claim and the contents are true based upon his personal knowledge. Where I use the "term upon information and belief", I believe those statements to be true.

_____
Abel Cedeno

SWORN TO BEFORE ME THIS 3rd
DAY OF JUNE 2019

_____
Thomas D. Shanahan
Notary Public

Thomas D. Shanahan
Notary Public - N.Y. State
No: 02SH633024
Expires: Sept. 14, 2022
Qualified in New York County